It's a pleasure to be here with you again today. Unless the panel directs me otherwise, I wanted to focus my comments on what I believe to be the two most critical and prejudicial errors occurring at trial and suppression hearing, and that is the fact that the defendant, Diana Pellant Jaime Martinez-Garcia, is not guilty of any of the crimes that have been committed against her. The first was the instructional issue relating to the excessive use of force. The second was the issue of the admission of statements, which were voluntary, involuntary, and taken in violation of Miranda. I think that perhaps the most important issue was whether, under the circumstances of this case, whether – and not just under the circumstances of this case, but whether there is, under Spahn 1 and Spahn 2, an affirmative duty on the part of the Court where a defendant raises an excessive use of force issue, where the issue is presented, whether that is required to be defined as an element. I think that what the Court … Kagan. Well, you're reading Spahn 2. I mean, there's a paragraph in Spahn 2 that says he didn't do this, he didn't do that, and he didn't do that, and he committed ineffective assistance. And you're suggesting that he had to do each of those things individually, right? In other words, what they said was he didn't – he didn't ask for it to be an element of the crime, he didn't ask for a self-defense excessive force instruction, and there was something else he didn't do, all going to the same point. And I read it as saying, you know, if he had done any of those things. But you're reading it as saying he had to do all of those things. Well, I'm – I know that this Court does not – does not lightly find a defense attorney ineffective for failure to craft or to offer two instructions. And I found that there were – my reading of Spahn 2 was that there were two instructions that the Court found defense counsel ineffective for not raising. The first was with respect to not offering an instruction with respect to excessive use of force as a – as a – as a self-defense. The second was by the failure to raise it – to define in the elements good faith performance of official duties as excluding excessive force. And I don't – I don't see this panel or another panel saying lively that a defense attorney was ineffective for failing to suggest that where, in fact, I think that the standard is much stronger when you're talking about ineffective assistance. Well, I mean, there was a whole instruction here about the relationship between excessive force and self-defense. What difference would it have made if it was done the other way? Well, the difference was that first, it obviously wasn't in the elements instruction. Most importantly, what – the way that the Court instructed the jury was that it made – and particularly the way it was argued by the government, which was not misdeferred, by the way, was that it made excessive use of force or the lack of excessive use of force conditional. It said that a defendant – I'm just paraphrasing, but it said that the government had the burden of proving one of three things. The first is that – of disproving one of three things. The first is that they did not use excessive use of force. The second was that the defendant reasonably believed that he was required to use force to respond. And the third was that he did not use an excessive amount of force. So essentially what the Court did was saying you don't have to find that the defendant – that the agent did not use excessive use of force. You don't have to find that the agent was acting within his official duties because that's part of acting within your official duties. All you have to find is that the defendant was not – was not reasonable in reacting the way that he did. Now, in many cases, that might not be an issue. But in this particular case, what happened was that the – was in closing arguments, the prosecutor argued that, listen, he's not – he's not here out on a Saturday for no good reason. He's in his uniform. He's obviously doing – you know, he's performing some of his duties. And – but the – and the implication was so long as he's – whatever he's doing, whether he's engaged in a frolic, whether he's engaged in excessive use of force, he's engaged in his duties. And that wasn't the instruction. The instruction was that if he was engaged in excessive use of force and the defendant reasonably self-defended, then he was – that was a defense. No. That wasn't a defense. In fact, the government had to prove that that wasn't the case. But the government had to prove one of three things. The government had to prove either that the defendant – that the agent had – had not used excessive force. Right. Or, second, that the defendant did not reasonably believe that his actions were necessary. Now, what the government did was argue in closing arguments that, you know what, this defendant said – one of the statements that he said, the inculpatory statement, was that he threw rocks at the agent because he was mad at him after he shot him. And that's not reasonable. So regardless – so under the government's theory, there could have been excessive use of force, which I think there clearly was. And then the defendant, because he's out there in the middle of the desert, has no means to protect himself beyond the rocks that he's got, throws a rock because that's all there is to him. And then the government says, well, that's not – under the instruction, he's not entitled – he's not – the government has disproved the defendant's affirmative defense because they proved one of the three things that he had to – that they had to prove. And in your view, we should assume the jury said to itself, okay, this agent for no reason at all shot somebody. And then the guy threw a rock back at him. We're going to decide that the guy just throwing a rock after being shot by an agent for no reason at all used excessive force. It wasn't reasonable in throwing a rock after he's been shot. We should speculate. That's the way a jury's – on this record, that's the way a jury's mind would work, right? I think the Supreme Court has told us we shouldn't assume the jurors are overly arcane or overly stupid. And doesn't it sound a little bit like that? Could you turn that off? It's very disconcerting. I'm sorry. Turn it off. It's still ringing. I said turn it off. Shut it down. Give it to the bailiff and he can take it outside. Mr. Siegel, you ought to know better than that. It's turned off. I'm sorry. Would you bring it – I mean, don't bring those into court when they're turned on yet. You know better than that. I know better. I'm sure the district court in Arizona has a rule about that. Yes, they do. Besides, usually if you want to turn a phone off, you just turn it off. Unfortunately, with his iPhone, it's not immediately. But anyways, in response to your question, Judge, there was a number of pieces of evidence which supported the idea that this was not just a defendant who was just throwing a rock for no reason and that the agent was shooting him for no reason. There was evidence, first off, that there was a – from the defense medical expert who was unimpeached except for the fact that he was a retained expert, which said that the defendant – that the gunshot wounds were going down. Each gunshot wound, the pathway was going down. The officer's testimony was that the agent – that the defendant – Well, what does that have to do with the self-defense? What's that? That has something to do with excessive force, but it doesn't have to do anything to do with your self-defense hypothetical. I mean, that would have to be that the guy was down. He was lying – he was lying down somehow, right? Right. But what the agent testified was that he was up. Okay. The agent testified that he's up throwing a rock. They were separated by a distance, though, weren't they? They were only – according to the agent, it was 12 feet. And then he took a step forward towards him. There was also testimony that the agent, which was uncontradicted, that the defendant threw with his left arm. His dominant arm was his right arm, which was in evidence, and then – and he was shot in the right arm. The only reason why he – if a – if a – But under the instructions as they were given, if the jury believed that, why wouldn't they have found that there was excessive force and that there was, therefore, a self-defense defense? Because the jury – because the judge took that off the table by not requiring excessive force. The judge – I don't understand how – why you're saying he didn't – he required excessive force and – but also a reasonable response. So on your theory – Not also. I'm sorry to interrupt. Go ahead. If there was excessive force, the response had to be reasonable. The jury instruction – Is that an incorrect rule? That wasn't the rule, though. The jury instruction was in the alternative. The jury instruction said that if the – that the jury – that the government had to prove beyond a reasonable doubt one of the following. Number one – That's right, because it doesn't matter whether there was excessive force if the response was unreasonable. And that is what I believe is not correct, because that's conflating the self-defense with the – with the elements of the offense. The elements of the offense require that the – So your view is that if the – if the – there was excessive force, then all bets are off. You can have unreasonable force. Not unreasonable force, but in terms of the – in terms of the specifics of this case, he didn't use unreasonable force with respect to doing something that was more forceful, but according to the government, that just didn't make sense. But that seems like a stupid and probably incorrect argument, that reasonable force usually means not more than you need. It doesn't mean less than you need. And that's the – So somebody should have said that. But that would apply no matter what instructions were given. But that's what the – what it allowed the jury to – No, it didn't. I mean, it didn't any more than a correct instruction where – that was structured as part of the – if you structure it as part of the elements, you'd still have to say that the force has to be reasonable, right? No. Because it was only one of the alternatives. And if the jury found that there was no excessive – if the jury found that there was excessive force, they were allowed to find that the defendant was still liable because the amount of force he used was not reasonable. So therefore, your position has to be that the correct instruction would be it doesn't matter whether it was reasonable. No. With respect to the elements of the offense, not with respect to the defense. And the proper defense is – Well, if anything, then you're worse off because then the burden of proof shifts at that point. The proper – and I would like to reserve a couple minutes if I may, so. Then you've got a minute and 40 seconds. You wasted about two minutes with your iPhone, so. May I just reserve the remaining time? Yes. In a peace court, my name is Bruce Fergus. I'm an assistant United States attorney on behalf of the government in this case. I am having some difficulty following the defendant's position in this court. But I would direct the court's attention to the actual wording of the instructions, which are included in my answering brief. Page 43, I quote, the district court told the jury as to count three, which is the one that's concerning ostropenia. Defendant asserts that he acted in self-defense against the use of excessive force by ostropenia. Use of force is justified when the defendant reasonably believes it's necessary for the defense of oneself against immediate use of unlawful excessive force. Then the next paragraph reads that as far as this assertion of self-defense, it is a defense to the charge if, one, the agent used more force than appeared reasonably necessary before the defendant assaulted him. Two, the defendant reasonably believed his use of force was necessary to defend against immediate use of unlawful force. And three, the defendant used no more force than appeared reasonably necessary. And then later on, the district court put the burden on the government to disprove one of those elements of not of an offense, but of the defense. So it's difficult to see, other than semantically, calling it an element of the offense when the statute isn't written that way, or a defense that makes any difference. Because the burden was placed on the government to show that excessive force was not used. And therefore, essentially, though not obviously in the terms that he wanted, the defendant got what he asked. Now, what he's saying is the burden was not on the government to prove that. Well, the page 44, where I quote the instructions, it said, in addition to proving all the elements of the crime beyond a reasonable doubt, the government must also prove beyond a reasonable doubt either that the agent did not use excessive force. There's his point. He says either means the government didn't have to prove that it didn't use excessive force. But that kicks in when the rest of the elements are, that were described in the previous instruction. As I suggested, I think that the district court actually ended up giving instructions here for which there was no factual basis. Because the uncontested evidence at trial from Osterpinia was that the defendant threw the rock, striking him on the thigh. And only then did he draw his gun. And then as the defendant cocked back to throw a second rock, only at that point did he shoot him. So the assault, which was charged, was completed before any force was exerted against the defendant. And this taunts between Osterpinia and the defendant. So. Well, the evidence required, the required evidence for an instruction is very little. It's little, but it's not nothing. All right. And here you do have his earlier stories in the confession. I understand he ultimately signed something else, but he did sell some different stories when they were reported to the jury. And there is the expert evidence, which seems to suggest perhaps that he was shot while he was on the ground, rather than standing up. Why isn't that enough? Just right there. Well, as far as his statements, he never testified, which he was not required to do. But the fact is, he did not testify. So we had nothing from the defendant personally. The only other real witness. Pardon me? But they came in. I'm sorry. Those statements did come in. But not for their truth. And that's, I think, the important thing, is that this was part of his evolving discussion of what he claimed to have happened. And basically, he recanted that when he, when Agent Terwilliger said, wait a minute, let's get down to it. What is it that you really are saying here? And that's what she reduced to writing. And he said, yes, that's it, and signed off on it. So he effectively recanted all of those multiple other versions of what had happened and said, yes, this is what happened. And it's consistent with what Officer Pena said. Now, as far as the so-called expert evidence, you have to understand that Dr. Parks, when he was making the basis for his judgment about whether it was up or down or whatever, he testified that he was measuring the heights of the entry and exit wounds from the floor as the defendant was standing flat-footed on the floor in front of him. That's very different from on a slippery slope, one person elevated, the parties in motion. And so I don't think that we can conceptualize exactly where the defendant was in relation to Officer Pena at the moment that the shots were fired. And Parks wasn't there. He's used to dealing with dead bodies. He's a medical examiner. So he wasn't, if you want to put it in those terms, a crime reconstructionist who went through all the dynamics of how the people could have changed relative to one another. So he really had no basis for suggesting anything other than when you're standing on a flat floor, this is where the heights of the entry and exit wounds are in relation to one another. But that doesn't tell you anything about what happened out in the field. So I would suggest that really what the defendant got was a windfall, that he needn't have been given any kind of self-defense or excessive force instruction at all. But certainly what he did receive ---- That's just saying that it's harmless. If there was an error, it was harmless. Yes. Well, I'll tell you the truth. I'm confused about what SPAN says is or is not necessary because it repeatedly, even in SPAN 2, says this is an affirmative defense. And then it throws in that language about, oh, well, maybe an element, too. So it does not seem to fit as an offense element. There's simply that kind of snippet of dictum is what I call it. But in other cases, cite SPAN 1 and call it an affirmative defense language, too. So it seems to be the burden really ought to have been on the defendant to have come forward with more than he did to adequately present that. But even so, the government was required to negative at least one part of that set of instructions beyond reasonable doubt, just as if it were an element. So as I understand it, then, for the defense to apply, each one of these three elements must be established. Yes. And then it's the government's burden to prove, disprove all of them or just one of them? Just one was the way the instruction was given. Well, what does the law require? Well, my personal opinion. I'm not asking your personal opinion. What case says you only have to disprove one? Or do we have any authority for that proposition? I don't think I have a specific case.  The question is, if you have three elements that you have to prove and you fail to prove one of them, you don't prove the crime. Same thing with the defense. If there are three parts of that which you need to show to establish that that defense is available to you, if you fail to show one of them, or it's disproven in this case by the government, then it doesn't apply. Did the government produce this? Did the court draft this instruction on its own? Or was it provided by the government? The government provided some input. As a matter of fact, that's where there was so much back and forth and why, basically,  one of them, then it doesn't apply. The review ought to be only for plain error because the main discussion seemed to be between the government counsel and the court. And looking at this court's most recent, the 2010 version of the model instructions, which do, by the way, break out the offense elements for the assault in 8.3 from the defense elements, if you want to put it in those terms, which is 8.5, and how those should interact and how that should be modified in light of span. And basically, after having presented a memo which was based on a prior version of the model instructions, the defense counsel below, which was not Mr. Siegel, kind of said, well, I kind of don't agree, but he never gave any specific grounds in this whole ongoing instruction why where the judge was ending up was incorrect or should have been done differently in his behalf. And so, if anything, it's plain error review, and certainly it doesn't rise to that level. The other major issue that was raised was with regard to the voluntariness of the waiver and the statement that was given. I have tremendous disagreements with the characterization of the facts that were given in the reply brief, and I can go through those in detail if you want. But the bottom line is that the magistrate heard the witnesses, made a report, specifically found that the evidence showed the waiver and the statement to be knowing, intelligent, and voluntary. There were no objections to that, so the district court accepted it. That failure to raise an objection by itself waives objection to the factual findings. And so when the magistrate effectively found knowing, intelligent, and voluntary, based on the evidence, again, the defendant did not testify. All we had was the agents plus the medical personnel saying, well, when we released him, we gave him his Percocet to take with him. And he was released. He had some before he left, and the interview was begun one hour after his release from the hospital. They released him to the agents, correct, when the agents took him to the office? Not to the ones who actually interviewed him. He was released to Border Patrol, who took him to their station, and then to Williger's FBI, and she was summoned, and the Border Patrol agent was provided to her as an interpreter. And when did the interview begin in comparison to when he left the? He got his last Percocet at about 3. He was released about 5, taken immediately to the station, so the interview began around 6, and he signed off on the statement at about 7. Nurse Sherman testified that she released him with the Percocet that had been prescribed for him, so it was presumably at least available. Both the Border Patrol agent and Terwilliger both said, we looked at him very carefully. We were listening to what he was saying, how he was responding, no indication either of excessive pain. Even the nurse was saying, well, how do I judge pain? Well, I looked to see if he was wincing or demonstrating those kinds of responses, how he reacts, exactly what they did, saw nothing. They specifically testified, did not appear drowsy, appeared to be alert, appeared to be responsive, so there simply is no factual basis. What Mr. Siegel attempted to do was look 18 hours back or 18 to 24 hours further on when he had the problems, or actually longer than that, when he showed up at the initial appearance. But even Dr. Rhee, his surgeon, said, well, I operated on him on the morning of 23rd, but I can't tell you what condition he was a day and a half later. It's the same thing. He appeared at the initial appearance, looked bad. 24 hours later, he was fine after having received some medical care, so you simply can't extrapolate from what he was like a day and a half later or a day and a half earlier as to what he was doing. So the magistrate, and this is obviously not clear error, said the testimony of the witnesses who saw him most closely in time, which were the agents and the nurse and nurse sherman, said that he was functioning fine. So there simply is no factual basis to contradict the findings of the Court. Thank you, counsel. Mr. Siegel, you have a minute and a half. I'd like to just briefly go over a few of the areas that were just discussed. First, the Court asked what the authority was about the necessity of proving the lack of excessive force in and of itself. SPAN 1 specifically recognized that a Federal agent acting outside of his official duties is not entitled to protect. That's obvious because it's part of the statute. It also said and recognized, and I'm quoting, that an agent who uses excessive force is not acting in good faith. And then, of course, SPAN 2 said it was ineffective not to seek that instruction. But they also said that you have to have, that the use of responsive force has to be reasonable, meaning that, so I don't see why it all doesn't amount to the same thing. If the government disproves that it was reasonable, then it doesn't matter whether it proves that the force was excessive under SPAN 1 and SPAN 2. So it's the same thing. The three-part, they have to prove one of them because there's no reason for them to worry about the excessive force if the response of force was not reasonable. I don't agree because I believe that the statute as an element requires that the defendant, that the agent be acting in good faith performance of his duties, which excludes excessive force. So therefore, so this is why I can't get my hands around. So is your position, therefore, that if they were acting in, if they were not acting in good faith because they used excessive force, it doesn't matter whether the response was reasonable. It can be unreasonable. That has to be your position. Otherwise, you don't have a position. According to the statute, correct. According to the statute. All right. So that's your position. Ultimately, your position is the reasonableness of the responsive force doesn't  That's what's wrong with the instruction. With respect to proving the government's case, with respect to raising a defense, with respect to proving the elements, with respect to raising an authority. But as a practical matter, then, your position is that the reason this made a difference and I just want to be clear about this, is that if the government had had to prove the lack of excessive force and it wasn't sufficient to prove the lack of reasonable response, so even if the response was unreasonable, you could still win. Particularly in the, if not always, particularly in the circumstances of this case. There has to be an always about it. Where it's not alleged. But whether or not an instruction is given depends on the facts of the case. But is your position, then, if the government doesn't disprove the use of excessive force, then the fact that somebody responded on a different set of facts, say, to being hit with a knife, with shooting a gun, that wouldn't matter because the throwing of the rock, now I'm talking about by the government officer was excessive force and that's the end of the case? Under the statute as it's written. All right. So that's your ultimate position, that the reasonableness of the response doesn't matter. With respect to the government's proving its case, correct. And then finally, Bruce Ferg mentioned some things about the expert's testimony about where he was standing and so forth. Significantly, the agent said that the defendant was stationary. There's no, he said at the time that this incident occurred that the defendant was stationary. He wasn't moving. And if he's standing on an incline, if anything, that exaggerates the trajectory, not decreases it. And finally, the other testimony of the government experts said that there were other uses of force. This is government experts. Other uses of force that the agent should have been prepared to deploy when you're following somebody and that he was close enough in order to use those. He said that he could use a baton, a taser, chemicals, and the testimony is he was within 12 feet and he took a step forward. All those things can be used, and a baton can be used within 25, 15 feet as ideal. And the agent said that he should have been looking to use that. So from that testimony, the jury, had they been instructed on the use of force. Kagan. And I think that the real question here was sequence. That is, whether he threw the gun before he the rock before he was shot or afterwards. Because if he threw it, and maybe this ties up with your instructional argument, but if he threw it beforehand, then it doesn't really matter whether the force was excessive because he wasn't throwing the rock in response to the excessive force. And my position is there was an excessive amount, there was a lot, and certainly more than a scintilla of evidence to suggest that the defendant was, that he didn't throw it, not only his statements, the doctor's testimony and so forth. Appreciate it. Thank you for letting me take the time. See the bailiff to get your phone back. Thank you. I appreciate it. I really do apologize.
judges: Fernandez, Paez, Berzon